# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| TEXAS HEALTH MANAGEMENT LLC | § | |
| | § | |
| v. | § | Civil Action No. 4:18-CV-448 |
| | § | Judge Mazzant |
| HEALTHSPRING LIFE & HEALTH | § | |
| INSURANCE COMPANY, INC. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Texas Health Management LLC's ("THM") Motion to Re-Urge THM's Motion to Vacate Arbitration Award (Dkt. #32); Motion for Leave to Amend Original Petition (Dkt. #44); and Motion for Leave to Join Additional Parties (Dkt. #46). Having considered the motions and the relevant pleadings, the Court finds that the motions should be denied.

## BACKGROUND

The procedurally complex facts of this case provide a textbook example of why parties should inform the Court of related cases. The facts begin with an arbitration and end with the motion pending before the Court.

### I. Arbitration

The Court previously summarized the facts of the parties' arbitration.

> [Defendant HealthSpring Life & Health Insurance Company, Inc. "HealthSpring"] is a Texas corporation that offers "Medicare Advantage Plans." In May 2013, HealthSpring and [THM] entered into an agreement for THM to provide in-home medical services to HealthSpring's Medicare Advantage Members in Texas. In pertinent part, the agreement required THM to provide HealthSpring with completed 360 Comprehensive Assessments Forms ("360 Forms"), which contained important medical information regarding HealthSpring's Medicare Advantage Members.

On January 30, 2017, THM submitted a demand for arbitration ("Arbitration Demand"), which, among other things, sought fees allegedly owed to them for services THM provided to HealthSpring. Additionally, THM submitted an application for emergency measures of protection, which sought an equitable decree ordering HealthSpring to pay the invoices. The emergency arbitrator declined to award THM such emergency relief and referred the matter to a panel of three arbitrators (the "Tribunal") for further proceedings. On February 21, 2017, THM amended its original Arbitration Demand to include, in pertinent part, a claim under Section 2 of the Sherman Act.

During discovery, in connection with its Sherman Act claim, THM sought copies of certain contracts between HealthSpring and THM's competitors. On June 16, 2017, the Discovery Master and Chair of the Tribunal ordered HealthSpring to produce such contracts, but allowed HealthSpring the ability to redact "commercially sensitive terms." As such, HealthSpring produced such contracts in redacted form. On August 7, 2017, HealthSpring requested leave to file a motion for summary disposition on THM's Sherman Act claim. In response to HealthSpring's request, THM implored the Tribunal to reconsider its ruling that allowed HealthSpring to produce the subject contracts in redacted form. The Tribunal, declining to compel HealthSpring to produce the contacts in unredacted form, set an evidentiary hearing for THM to produce evidence in support of its Sherman Act claim. Prior to the hearing, THM withdrew its Sherman Act claim because it did not believe, with the evidence available, it could satisfy its burden of proof.

Between October and November 2017, the Tribunal held several evidentiary hearings on the remaining claims. Throughout this time, HealthSpring requested the Tribunal to enter an interim order requiring THM to turn over unreturned 360 Forms in THM's possession. On December 14, 2017, the Tribunal issued an order ("Order No. 6") requiring THM to return all undelivered 360 Forms to HealthSpring.

*Healthspring Life & Health Ins. Co., Inc. v. Tex. Health Mgmt. LLC*, 4:18-CV-242 (Dkt. #19), 2018 WL 3105655, at *1–2 (E.D. Tex. June 25, 2018).

## II.    The State Court Case

HealthSpring believed THM failed to comply with Order No. 6 and, consequently, on January 9, 2018, HealthSpring filed a Petition to Confirm Arbitration Order and for Injunctive

Relief, in addition to, an Application for Temporary Restraining Order and Temporary Injunction to Enforce Arbitration Order in the 219th Judicial District Court of Collin County, Texas. *Id.* On January 12, 2018, the 219th District Court granted a temporary restraining order ("TRO") against THM and ordered THM to comply with the Tribunal's Order No. 6. *Id.* at *2. On January 26, 2018, the 219th District Court converted the TRO into a temporary injunction and confirmed Order No. 6. *Id.* THM ultimately failed to comply with Order No. 6. *Id.*

On March 14, 2018, the Tribunal in the arbitration rendered its Final Award, which denied all of THM's claims against HealthSpring. *Id.* On March 20, 2018, HealthSpring filed a Motion to File Under Seal requesting that the 219th District Court file the Tribunal's Final Award under seal. *Id.*

## III.    Removal and Remand

On April 6, 2018, THM removed the case filed in the 219th District Court to this Court on the basis of federal question jurisdiction (the "first-filed suit"). *Id.* On April 11, 2018, HealthSpring filed an Emergency Motion to Remand. *Id.* The motion was fully briefed by May 1, 2018. Notably, the Court remanded the first-filed suit to the 219th District Court on **June 25, 2018, at 2:18 p.m.** finding a lack of federal question jurisdiction. *Healthspring Life & Health Ins. Co., Inc*, 4:18-CV-242 (Dkt. #19), 2018 WL 3105655.

## IV.    The 90-Minute Window

Despite the first-filed suit—pending in this Court between April and June 2018—THM filed this case in the United States District Court for the Southern District of New York on May 22, 2018 (the "second-filed suit") (Dkt. #1). In this case, THM petitions the Court to set aside the Final Award entered by the Tribunal pursuant to 9 U.S.C. §10(a) (Dkt. #1).

HealthSpring notified Senior United States District Judge Victor Marrero of the Southern District of New York of the first-filed suit, but neither party notified this Court of the second-filed suit (Dkt. #16). Pursuant to the first-filed rule and 28 U.S.C. § 1404(a), Judge Marrero transferred the second-filed suit to this Court on June 18, 2018 (Dkt. #16). The second-filed suit was not administratively transferred until **June 25, 2018, at 3:48 p.m.** (Dkt. #18). During the seven-days between the signing of the order and the administrative transfer, neither party contacted the Court to notify it of the transferred second-filed suit, despite the pending emergency motion to remand in the first-filed suit.

As noted above and by sheer coincidence, the Court remanded the first-filed suit to the 219th District Court ninety minutes before the second-filed suit was administratively transferred to this Court. *Healthspring Life & Health Ins. Co., Inc.*, 4:18-CV-242 (Dkt. #19), 2018 WL 3105655. Consequently, the Court could not consider whether the first and second-filed cases should be consolidated and remanded together. As the parties did not notify the Court of the second-filed suit and because of the unfortunately timed remand, the Court is now faced with parallel proceedings—the first-filed suit in the 219th District Court and the second-filed suit here.

## V. Meanwhile, in State Court

It is evident from the briefing that THM has not fared well in the first-filed suit remanded to the 219th District Court. HealthSpring alleges the 219th District Court ordered THM at least five times to produce the 360 Forms (Dkt. #36 at p. 1). In response to this noncompliance, THM states that the 219th District Court "wielded incarceration as a means to force THM's hand" by imprisoning Joseph Stroffolino—THM's managing director and majority member—for five days and threatening to imprison THM's counsel (Dkt. #35 at pp. 1–2 n.3).[1]

---

1. The 219th District Court indicated that THM actively attempted to avoid compliance with the court's orders: "They can't just keep moving the documents into another shell company and saying 'I don't have them, the other one has

4

THM also moved the 219th District Court to vacate the Final Award. The 219th District Court struck and denied THM's motion to vacate and confirmed the Final Award on September 7, 2018 (Dkt. #34; Dkt. #40-1 at p. 23). HealthSpring states that THM has filed an appeal of these orders and THM claims the 219th District Court acted with "complete disregard for the well-established principles of comity and federalism . . . ." (Dkt. #35 at p. 1; Dkt. #36 at p. 2).[2]

## VI. Here and Now

### A. Motion to Re-Urge

On May 23, 2018, THM filed a Motion to Vacate Arbitration Award in the Southern District of New York (Dkt. #6). Pursuant to Local Rule CV-7(j), THM's motion to vacate was rendered moot, subject to re-urging, after Judge Marrero transferred the case.

On August 31, 2018, THM filed its Motion to Re-Urge THM's Motion to Vacate Arbitration Award (Dkt. #32). HealthSpring filed a response to the motion on September 4, 2018 (Dkt. #33). THM filed a reply in support of the motion on September 11, 2018 (Dkt. #35). HealthSpring filed a sur-reply to the motion on September 13, 2018 (Dkt. #36). Central to the parties' dispute is whether the Court may exercise subject matter jurisdiction over the case.

### B. Motions for Leave

On January 7, 2019, THM filed a Motion for Leave to Amend Original Petition (Dkt. #44) and a Motion for Leave to Join Additional Parties (Dkt. #46). In its motion to amend, THM seeks leave to add 42 U.S.C. § 1983 claims (Dkt. #44 at p. 8). These claims include:

- Claims by THM and Hamilton Fund Management LLC ("HFM")—an asset management company—against Judge Scott Becker of the 219th District Court

---

them,' even though they run every shell company and having caused you to get new orders on each shell company, this thwarts the whole purpose of the order." (Dkt. #40-1 at p. 10).

2. The Court reminds THM's Counsel of Local Rule AT-3, "A lawyer owes, to the judiciary, candor, diligence, and utmost respect." This rule applies to THM's characterization of the 219th District Court's rulings regardless of whether THM agrees with the ruling.

alleging Judge Becker forced THM and HFM in the first-filed suit to produce the 360 Forms in violation of THM and HFM's Thirteenth Amendment rights.

- Claims by THM, HFM, and Hamilton Green Crest Fund II L.P. ("HGCF")—an investment fund—against Judge Becker alleging Judge Becker failed to afford HFM and HGCF notice and an opportunity to be heard in the first-filed suit before ordering Robert Cutler—THM's Counsel—to produce the 360 Forms in violation of THM, HFM, and HGCF's Fourteenth Amendment rights.

- Claims by Stroffolino against Deputy Sheriff Amon of Collin County alleging Deputy Sheriff Amon illegally arrested and imprisoned Stroffolino in compliance with Judge Becker's two Capias warrants, issued in the first-filed suit, in violation of Stroffolino's Fourth and Fourteenth Amendment rights.

(Dkt. #44 at p. 8; Dkt. #45). In its motion to join additional parties, THM seeks to join HFM, HGCF, and Stroffolino as additional plaintiffs and Judge Becker and Deputy Sheriff Amon as additional defendants (Dkt. #46).

THM filed its motions for leave on January 7, 2019 (Dkt. #44; Dkt. #46). HealthSpring filed responses to the motions on January 22, 2019 (Dkt. #47; Dkt. #48). THM filed replies in support of its motions on January 28, 2019 (Dkt. #49; Dkt. #50). HealthSpring filed sur-replies to the motions on February 4, 2019 (Dkt. #51; Dkt. #52).

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). One statute, 28 U.S.C. § 1331, authorizes "federal question" jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." To determine whether federal question jurisdiction exists, courts apply the "well-pleaded complaint" rule. The well-pleaded complaint rule "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's

properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011).

When a court looks to the face of the plaintiff's well-pleaded complaint, one of two circumstances present a federal question establishing jurisdiction under § 1331. "Most directly, and most often, federal jurisdiction attaches when federal law creates the cause of action asserted." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562, 1569 (2016); *see also Gunn*, 568 U.S. at 257 (citing *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916)) ("Most directly, a case arises under federal law when federal law creates the cause of action asserted."). Therefore, if the Court finds a federally created cause of action on the face of the plaintiff's well-pleaded complaint, the Court may exercise federal question jurisdiction over the claim.

However, even if the court finds only state-created causes of action on the face of the plaintiff's well-pleaded complaint, "there is 'a special and small category of cases in which arising under jurisdiction still lies.'" *Manning*, 136 S. Ct. at 1569 (quoting *Gunn*, 568 U.S. at 258). To determine whether a case falls within this special and small category, courts ask "does [the] state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). "That is, federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can

be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258 (quoting *Grable*, 545 U.S. at 313–14).

"Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)); FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Further, parties may raise objections to subject-matter jurisdiction at any time. *Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).

## ANALYSIS

The Court previously remanded the first-filed suit due to a lack of subject matter jurisdiction. *Healthspring Life & Health Ins. Co., Inc.*, 4:18-CV-242 (Dkt. #19), 2018 WL 3105655, at *4. Specifically, the Court found it could not exercise federal question jurisdiction. *Id.* In this case, the parties again contest whether the Court possesses subject matter jurisdiction (Dkt. #32 at p. 4 n.3; Dkt. #33; Dkt. #35; Dkt. #36). THM alleges that federal question and supplemental jurisdiction exist under 28 U.S.C. §§ 1331 and 1367 (Dkt. #32 p. 4).[3] Therefore, the Court must first determine whether it may exercise jurisdiction over THM's current claim to vacate the Final Award pursuant to 9 U.S.C. § 10(a) of the Federal Arbitration Act ("FAA"). *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 100 (5th Cir. 2018) (citations omitted) (It is the "general expectation that federal courts address subject-matter jurisdiction at the outset in the 'mine run of cases' . . . ."). If the Court cannot exercise subject matter jurisdiction over THM's § 10 claim, the Court must determine whether THM's motions for leave establish subject matter jurisdiction.

---

3. There is not diversity jurisdiction under 28 U.S.C. § 1332 as THM is a Texas limited liability company with at least one member who is a citizen of Texas and HealthSpring is a Texas corporation (Dkt. #45 at ¶¶ 1,

## I.  Subject Matter Jurisdiction: § 10

THM first asserts that the Court may exercise subject matter jurisdiction over its § 10 claim for two reasons: (1) Judge Marrero found that subject matter jurisdiction exists in his order transferring the case and (2) THM asserts a federal question on the face of its Motion to Vacate (Dkt. #32 at pp. 4–5).

### A.  Transfer Order

THM contends that "[i]n order for a district court to transfer a case pursuant to 28 U.S.C. [§] 1404(a) the court must first assess subject matter jurisdiction . . . .".  (Dkt. #35 at p. 9). Therefore, THM explains, because Judge Marrero transferred the case to this Court pursuant to § 1404(a), Judge Marrero implicitly found that subject matter jurisdiction exists.  Alternatively, THM claims that Judge Marrero explicitly addressed subject matter jurisdiction in his order. THM's arguments are incorrect because THM does not account for the "first-to-file" rule and THM deliberately misquotes Judge Marrero.[4]

THM provides unpersuasive authority for the proposition that a district court must address subject matter jurisdiction before transferring a second-filed case under § 1404(a) to the district court where a first-filed case is pending. (Dkt. #32 at p. 5; Dkt. #35 at p. 9).[5]  Judge Marrero transferred this case to this Court under § 1404(a) analyzing the first-to-file rule (Dkt. #16). "Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially

---

4. Also referred to as the "first-filed" rule.
5. None of THM's authority addresses a district court transferring a second-filed suit to a district court where a first-filed suit is pending.  *See Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 22 (1960); *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004); *Lifestyle Sols., Inc. v. Abbyson Living LLC*, 216CV01290JRGRSP, 2017 WL 5257006, at *1 (E.D. Tex. Nov. 10, 2017); *Royal Smit Transformers BV v. HC BEA-LUNA M/V*, CV 16-14647, 2017 WL 819243, at *2 (E.D. La. Mar. 2, 2017); *Posven, CA v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 401 (S.D.N.Y. 2004).

overlap." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999). Importantly, a district court's inquiry "under the first-to-file rule is 'properly limited . . . to the potential overlap between the two cases.'" *Salazar v. Bloomin' Brands, Inc.*, 2:15-CV-105, 2016 WL 1028371, at *2 (S.D. Tex. Mar. 15, 2016) (quoting *Cadle Co.*, 174 F.3d at 606). In other words, the second-filed court considers only the potential overlap between the two cases and no other matters—such as jurisdictional disputes.[6] The rule "is grounded in principles of comity and sound judicial administration." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). The second-filed court must allow the first-filed court to consider jurisdictional disputes once the case is transferred to avoid "trenching on the authority of its sister court." *Cadle Co.*, 174 F.3d at 606. Therefore, at least in the Fifth Circuit, a second-filed court should not address subject matter jurisdiction before transferring a case to the first-filed court.

The Court does not examine the Second Circuit's jurisprudence concerning the "first-to-file" rule because Judge Marrero expressly left the decision on subject matter jurisdiction to this Court. THM argues that it is "clear that Judge Marrero" found subject matter jurisdiction in this case (Dkt. #35 at p. 9). THM quotes Judge Marrero's order in support of its argument, "there is no dispute that [this action] could have been filed in the Eastern District of Texas." (Dkt. #32 at p. 5; Dkt. #35 at p. 9).[7] THM's quotation is misleading.[8] The full sentence from the order reads,

---

6. *See Cadle Co.*, 174 F.3d at 606 ("The district court correctly refused to act as a 'super appellate court' by entertaining either Cadle's jurisdiction or the defendants' standing arguments, and properly limited its inquiry to the potential overlap between the two cases."); *Marks v. Mackey*, 6:14-CV-00441, 2014 WL 3530137, at *3 (W.D. La. July 15, 2014) (citing *Cadle Co.*, 174 F.3d at 604–5) ("Indeed, the Fifth Circuit has rejected the proposition that the first-to-file rule requires the court with the second-filed suit to consider whether the court with the first-filed suit has jurisdiction."); *Your Preferred Printer, LLC v. United Wholesale, LLC*, CIV.A. 11-2954, 2012 WL 3016771, at *3 (E.D. La. July 23, 2012) (citations omitted) ("The Court can quickly dispose of this argument because the Fifth Circuit has held that establishing jurisdiction in the first-filed court 'is never a condition precedent' to applying the first-to-file doctrine.").

7. Considered alone, these words do not amount to a ruling that subject-matter jurisdiction exists.

8. This is not the first time the Court has commented on THM's selective citations. In its order remanding the case to the 219th District Court, the Court found, "Although THM cites to various cases to support its argument that the look-through approach does apply in these circumstances, such cases fail to stand for such a proposition." *Healthspring Life & Health Ins. Co., Inc.*, 4:18-CV-242 (Dkt. #19), 2018 WL 3105655, at *5. The Court should be able to rely on

"*Assuming that the federal courts have subject matter jurisdiction over this case*, there is no dispute that it could have been filed in the Eastern District of Texas." (Dkt. #16 at p. 4) (emphasis added). Contrary to THM's assertion, Judge Marrero assumed subject matter jurisdiction existed, he did not rule on the issue. In fact, in the same paragraph, Judge Marrero cites the similarities between the parties' jurisdictional dispute in this case and the first-filed suit as a reason favoring transfer (Dkt. #16 at p. 3). As Judge Marrero did not rule on subject matter jurisdiction, the issue is ripe for review.

### B. Federal Question Jurisdiction

THM alleges there is federal question jurisdiction in this case (Dkt. #32 at p. 4). To determine whether federal question jurisdiction exists, courts apply the "well-pleaded complaint" rule. Looking to the face of THM's well-pleaded petition to vacate, THM does not allege a federally created cause of action establishing federal jurisdiction (Dkt. #1). Instead, THM petitions the Court to vacate the Final Award pursuant to § 10 of the FAA.[9] Although § 10 is federally created, it is well-established that "§ 10 does not create federal subject matter jurisdiction." *Smith v. Rush Retail Ctrs., Inc.*, 360 F.3d 504, 506 (5th Cir. 2004); *Oteeva, LP v. X-Concepts LLC*, 253 F. App'x. 349, 350 (5th Cir. 2007); *Chi. Bridge & Iron Co. N.V. v. TRC Acquisition, LLC*, CIV.A. 14-1191, 2014 WL 3796395, at *2 (E.D. La. July 29, 2014). Therefore, THM does not allege a federal cause of action sufficient to establish federal question jurisdiction on the face of its well-pleaded complaint.

---

counsel's citations as a fair and accurate representation of the cited material. Unfortunately, this is not the case with THM.

9. THM alleges multiple times that its constitutional due process argument transforms its § 10 claim into a federal question (*See* Dkt. #32 at p. 4 n.3; Dkt. #45 ¶ 12). THM confuses its legal *claim*—a petition to vacate the Final Award under § 10—with an *argument* to support its legal claim—the Tribunal violated THM's due process rights.

THM may also establish federal question jurisdiction if THM shows that a federal issue in its petition causes the case to fall within the "'special and small category of cases in which arising under jurisdiction still lies.'" *Manning*, 136 S. Ct. at 1569 (quoting *Gunn*, 568 U.S. at 258). To do so, THM must identify a federal issue that is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

THM contends there is federal question jurisdiction in this case because THM asserts a due process argument in its motion to vacate (Dkt. #32 at p. 4). Specifically, THM claims the Tribunal violated THM's Fourteenth Amendment due process right to communicate with counsel by ordering Stroffolino not to contact THM's legal counsel during breaks in an evidentiary hearing (Dkt. #7 at pp. 35–36; Dkt. #32 at p. 4).

THM's identified federal issue does not establish federal question jurisdiction because it is not necessarily raised. A federal issue is "necessarily raised" if a plaintiff's right to relief requires a resolution of the federal issue. *See Gunn*, 568 U.S. at 259; *Manning*, 136 S. Ct. at 1570 ("the claim's very success [must] depend[ ] on giving effect to a federal requirement."); *PlainsCapital Bank v. Rogers*, 715 F. App'x. 325, 330 (5th Cir. 2017) (citations omitted) ("When state law provides an alternative ground for recovery, the federal issue is not 'necessarily raised.' . . . In this case, it was not necessary to raise the federal issue because there are independent state-law grounds for recovery."); *Enable Miss. River Transmission, L.L.C. v. Nadel & Gussman, L.L.C.*, 844 F.3d 495, 499 (5th Cir. 2016); *Gomez v. O'Reilly Auto. Stores, Inc.*, 283 F. Supp. 3d 569, 575 (W.D. Tex. 2017).

To succeed in its petition to vacate the Final Award, THM must show: (1) "the award was procured by corruption, fraud, or undue means;" (2) "there was evident partiality or corruption in

the arbitrators, or either of them;" (3) "the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced;" or (4) "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10. In its motion to vacate, THM argues the "Award should be vacated due to numerous acts of misconduct." (Dkt. #7 at p. 2). THM presents many arguments on why the Final Award should be vacated, including: (1) the Tribunal was partial to HealthSpring; (2) THM could not obtain material evidence; (3) the Tribunal exceeded its power under the Business Service Agreement and American Arbitration Act; and (4) the Tribunal acted with manifest disregard to state law (Dkt. #7 at pp. 2–3).[10] THM's due process argument is merely one theory, among many, found in THM's motion to vacate (Dkt. #7 at pp. 35–36).[11] A court could vacate the arbitration award on the other grounds presented by THM without addressing THM's due process issue. As THM's right to relief does not depend on the due process issue, the due process issue is not necessarily raised and THM's claim does not fall within "the special and small category of cases in which arising under

---

10. "The actions taken by the Tribunal in reaching the Award betray wrongdoing of enormous magnitude. THM has identified no less than 10 acts of misconduct, and they are so pervasive and severe they meet the criteria for four of the five grounds for vacatur. These transgressions were deliberate, malicious and aimed solely at THM." (Dkt. #7 at pp. 6–7).

11. For example, THM argues: "The manner in which THM was treated in the Arbitration is abhorred. THM was prejudiced throughout the proceedings by an unruly Tribunal commandeered by its Chair, Mr. Appel. Mr. Appel alone made decisions and signed documents on behalf of the entire Tribunal though he lacked the authority to do so. He denied THM access to pricing information that was significant to THM's Sherman Act claim. He interrupted THM's cross-examination to answer questions for the witnesses and/or convince them to change their answers. During THM's cross-examination he advocated for HealthSpring and argued against THM in the presence of witnesses and the other arbitrators. *He denied THM access to legal counsel* and allowed THM's witnesses to be deposed without THM's counsel present. He awarded HealthSpring possession of the Forms without any assessment of the merits of the breach of contract claim or irreparable harm to HealthSpring. He ignored Mr. Daniels' ruling on the pricing terms in the contract. He did all of this while at the same time accepting financial incentives from HealthSpring and its parent company Cigna." (Dkt. #7 at pp. 57–58).

jurisdiction still lies." Accordingly, there is no federal question jurisdiction over THM's § 10 claim.

## II.    Motions for Leave

The Court must now determine whether THM can establish subject matter jurisdiction through its motions for leave (Dkt. #44; Dkt. #46). In its Motion for Leave to Amend, THM seeks to add new § 1983 claims:

> THM intends to amend and supplement the Original Petition to add claims under 42 U.S.C. § 1983 that have arisen after THM filed the Original Petition. These claims center around two events that are connected to the issuance of the TRO and, more generally, the Interim Ruling that was made in the Arbitration: (1) [Deputy Sheriff] Amon's arrest and incarceration of Mr. Stroffolino and (2) [Judge] Becker's order at a hearing on September 6, 2018 directing Mr. Cutler to turn over to HealthSpring [360 Forms] located in Connecticut. The new claims can be summarized as follows:
>
> (1) claims by THM and HFM against [Judge] Scott J. Becker for violating their respective Thirteenth Amendment rights by forcing them, through Mr. Cutler to turn over [360 Forms] pursuant to an unlawful order.
>
> (2) claims by THM., HFM and HGCF against [Judge] Becker for violating their respective Fourteenth Amendment rights by failing to afford HFM and HGCF advance notice and an opportunity to be heard before ordering Mr. Cutler to turn over the 360s.
>
> (3) Claims by Mr. Stroffolino against [Deputy Sheriff] Amon for violating his Fourth and Fourteenth Amendment rights by illegally arresting and incarcerating him after failing to follow the directives in the two Capias warrants issued by [Judge] Becker.
>
> These claims are logically related to the underlying Arbitration and THM and the additional proposed plaintiffs should be permitted to assert them in this action.

(Dkt. #44 at pp. 7–8). THM seeks to join HFM, HGCF, and Stroffolino as additional plaintiffs and Judge Becker and Deputy Sherriff Amon as additional defendants (Dkt. #46). Before

examining the jurisdictional question, the Court addresses a preliminary matter concerning the Local Rules.

### A. Local Rules: Certificate of Conference

HealthSpring claims THM's motions for leave do not comply with Local Rule CV-7(h) and (i) (Dkt. #47 at pp. 10–11; Dkt. #48 at pp. 8–9). Rule CV-7(h) requires parties to "meet and confer" before filing a motion:

> For opposed motions, the substantive component requires, at a minimum, a personal conference, by telephone or in person, between an attorney for the movant and an attorney for the non-movant.
>
> . . . .
>
> In the personal conference, the participants must give each other the opportunity to express his or her views concerning the disputes. The participants must also compare views and have a discussion in an attempt to resolve their differing views before coming to court. Such discussion requires a sincere effort in which the participants present the merits of their respective positions and meaningfully assess the relative strengths of each position.

Rule CV-7(i) provides, in part, that parties must state in a Certificate of Conference accompanying their motion that they complied with Rule CV-7(h)'s "meet and confer" requirement.

The Clerk of the Court marked THM's motions for leave as deficient because the motions did not contain Certificates of Conference (*See* Dkt. Entries of Jan. 7, 2019). THM then refiled its motions for leave with Certificates of Conference (Dkt. #44 at p. 10; Dkt. #46 at p. 10). THM's Certificates of Conference state:

### <u>CERTIFICATE OF CONFERENCE</u>

> I hereby certify that Petitioner's Motion [ ] for Leave . . . is an opposed motion and that Counsel for the Petitioner has complied with the meet and confer requirement in Local Rule CV-7(h) ***by attempting to contact Counsel for the Respondent by phone and***

> **email on January 7, 2019**. Accordingly, discussions have ended in
> an impasse leaving an open issue for the court to resolve.

> /s/ Robert A. Cutler<br>Robert A. Cutler

(Dkt. #44 at p. 10; Dkt. #46 at p. 10) (emphasis added).

In HealthSpring's responses, HealthSpring's Counsel state they have "no record of any calls or emails from Mr. Cutler or anyone at THM on January 7, 2019, . . . nor did HealthSpring's [C]ounsel have any discussion with Mr. Cutler that ended in an impasse." (Dkt. #47 at p. 11; Dkt. #48 at p. 9). In THM's replies to the motion, Mr. Cutler does not confirm that he contacted HealthSpring on January 7, 2019, but instead claims HealthSpring's argument is "unfounded" and the parties should not "engage in a debate of the actions and events that preceded the filing:"

> THM notes that HealthSpring's claim that THM did not comply
> with Local Rule CV-7(h) is unfounded. But rather than engage in a
> debate over the actions and events that preceded the filing, THM's
> counsel and HealthSpring's counsel agreed to schedule a telephone
> conference to unequivocally confirm the parties' respective
> positions regarding the two pending motions. **This telephone
> conference occurred on January 23, 2019**. At the conference the
> parties' counsel discussed, among other things, the legal basis for
> THM's new claims and why THM was seeking to add parties and
> did not bring claims against Mr. Becker and Mr. Amon in a separate
> action. Upon discussing these matters, the parties explicitly
> confirmed that a dispute exists that cannot be resolved without court
> intervention.

(Dkt. #49 at p. 5 n.2; Dkt. #50 at p. 5 n.4) (emphasis added).

The Court reminds the parties that the Local Rules require a movant to meet and confer *before* filing a motion, not after an opposing party challenges the movant's compliance with the Local Rules. However, because there is at least a "debate over the actions and events that preceded the filing," the Court will not deny THM's motions for failure to comply with the Local Rules.

**B. Retroactive Supplemental Jurisdiction**

Even if the Court granted THM's motions for leave, the newly asserted § 1983 claims could not establish jurisdiction over THM's current § 10 claim. As explained above, the Court cannot exercise federal question jurisdiction over the § 10 claim. Therefore, to maintain its § 10 claim in this Court, THM must establish supplemental jurisdiction over the claim. *See* 28 U.S.C. § 1367. However, THM cannot use an amended complaint to assert new federal claims in order to establish retroactive supplemental jurisdiction over its original claim. *See In re Katrina Canal Breaches Litig.*, 342 F. App'x. 928 (5th Cir. 2009).

In *Katrina*, the plaintiffs originally alleged claims against Jefferson Parish. *Id.* at 930. The district court could not exercise federal question jurisdiction over the claims against Jefferson Parish because the dispute only concerned "whether Jefferson Parish was under a general duty to maintain the levees under Louisiana law." *Id.* The plaintiffs then added Federal Tort Claims Act ("FTCA") claims against the United States in their second amended complaint. *Id.* at 931. The district court determined it could exercise federal question jurisdiction over the newly added FTCA claims. *Id.* Using the FTCA claims as a jurisdictional hook, the district court then exercised supplemental jurisdiction over the original claims against Jefferson Parish. *Id.* The Fifth Circuit summarized these facts:

> Specifically, the district court held that it had original jurisdiction over the plaintiffs-appellants' federal tort claims act claims against the United States that were added in the second amended complaint, and that those claims and the claims against Jefferson Parish arose out of a common nucleus of operative fact, thus warranting the exercise of supplemental jurisdiction over the claims against the Parish.

*Id.* at 931. The Fifth Circuit found the district court improperly exercised subject matter jurisdiction:

> [T]he new claims against the United States added in the second amended complaint cannot be relied upon to establish subject matter jurisdiction because while a plaintiff may amend a complaint to cure inadequate jurisdictional allegations, amendment may not create subject matter jurisdiction when none exists. . . . **This court has specifically held that an amendment may not remedy a jurisdictional defect by asserting a cause of action to serve as a statutory basis for federal question jurisdiction**. . . . Thus, supplemental jurisdiction based on the plaintiffs-appellants' federal tort claims act claims against the United States does not provide a valid basis for subject matter jurisdiction over the plaintiffs-appellants' claims against the Parish.

*Id.* (emphasis added) (citing James Wm. Moore *et al.*, *Moore's Federal Practice* § 15.14[3], at 15–34 (3d ed. 1999) ("Essentially, a plaintiff may correct the complaint to show that jurisdiction does in fact exist; however, if there is no federal jurisdiction, it may not be created by amendment."); *Whitmire v. Victus Ltd.*, 212 F.3d 885, 888 (5th Cir. 2000); *United States v. U.S. Fid. & Guar. Co.*, 959 F. Supp. 345, 347 (E.D. La. 1996) ("[W]hen a federal court lacks jurisdiction over the original complaint, as is the instant situation, the Federal Rules of Procedure do not allow the addition of a new party to create jurisdiction.")).

THM attempts the same strategy as the plaintiffs in *Katrina*. The Court cannot exercise federal question jurisdiction over THM's § 10 claim to vacate the Final Award. THM seeks to add § 1983 claims that are "logically related to the underlying Arbitration." (Dkt. #44 at p. 7–8; Dkt. #45). As a federal cause of action, the Court could exercise federal question jurisdiction over THM's § 1983 claims. *See NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 395 (5th Cir. 2015); *Villegas v. El Paso Indep. Sch. Dist.*, CIV.A.3:08CV234KC, 2008 WL 5683481, at *3 (W.D. Tex. Sept. 3, 2008). However, based on the analysis and holding in *Katrina* and its cited authority, the Court cannot use THM's newly asserted § 1983 claims as a jurisdictional hook to retroactively assert supplemental jurisdiction over THM's original § 10 claim because THM cannot "create

subject matter jurisdiction when none exists."  Therefore, even if the Court granted THM's

motions for leave, the Court could not exercise supplemental jurisdiction over THM's § 10 claim.

### C.  Arising out of the Same Conduct or Occurrence

THM hints that because its § 1983 claims arise from the same conduct or occurrence as its

§ 10 claim, the Court may exercise subject matter jurisdiction (*See* Dkt. #44 at p. 8).  Although not

cited by THM, the Fifth Circuit recently summarized:

> With regard to federal question jurisdiction, this court has said, in
> certain contexts, that "[a] complaint that is defective because it does
> not allege a claim within the subject matter jurisdiction of a federal
> court may be amended to state a different claim over which the
> federal court has jurisdiction" if the claim "arises out of the conduct
> or occurrence set forth in the original complaint."

*16 Front St., L.L.C. v. Miss. Silicon, L.L.C.*, 886 F.3d 549, 559 (5th Cir. 2018) (quoting *Johnson*

*v. Crown Enters., Inc.*, 398 F.3d 339, 342 (5th Cir. 2005)).

The Court does not believe THM's § 1983 claims arise from the same conduct or

occurrence as its § 10 claim.  THM initially petitioned the Court to vacate the Final Award under

§ 10 (Dkt. #1).  THM's motion to vacate seeks to set aside the Final Award based entirely on

conduct that occurred *in or during* the arbitration (Dkt. #7).  The only constitutional issue

presented in THM's motion to vacate is the violation of due process argument against the Tribunal

(Dkt. #7 at pp. 35–36).  In its motion, THM requests only that the Court vacate the Final Award

(Dkt. #7 at pp. 57–58).  If THM succeeds on its § 10 claim and the Court vacates the Final Award,

this finding would not affect THM's § 1983 claims.

In contrast, THM's § 1983 claims arise solely from conduct that occurred *outside or after*

the arbitration (Dkt. #44 at pp. 7–8).  The constitutional violations alleged in the § 1983 claims

concern the conduct of Judge Becker and Deputy Sheriff Amon, not the Tribunal (Dkt. #45 ¶¶ 121,

147).  THM, and the putative plaintiffs, request exemplary damages as relief for their § 1983

claims (Dkt. #45 ¶¶ 145–46, 165). If the plaintiffs succeed on their § 1983 claims and the factfinder awards damages, this finding would not affect the Final Award.

Fundamentally, THM hopes to bring two separate suits as one—a § 10 petition to vacate an arbitration award and a § 1983 action. In resolving these claims, the Court would need to review separate facts concerning different periods and judicial proceedings, apply different law, and analyze the conduct of distinct parties. As a result, the Court does not find that THM's claims fit within the circumstances described by *Mississippi Silicon.* 886 F.3d at 559

For all the reasons stated above, the Court cannot exercise federal question or supplemental jurisdiction over THM's § 10 petition to vacate. As a result, the Court **DENIES** THM's Motion to Re-Urge THM's Motion to Vacate Arbitration Award (Dkt. #32)

### D. § 1983 Claims

Although THM cannot proceed on its § 10 claim in this Court, THM may pursue its § 1983 claims. In *Mississippi Silicon*, the Fifth Circuit also held:

> We have found no decision that holds that if an original complaint—arising via federal question, not diversity or removal—asserts a claim against a party over which the court has no subject matter jurisdiction, the district court cannot assert federal question jurisdiction over a claim asserted against a new party in an amendment adding the new defendant.

*Id.* at 560. In other words, although the Court may not have jurisdiction over THM's § 10 claims, the Court may exercise jurisdiction over the newly asserted § 1983 claims.

As written, THM's motions for leave contain both the § 10 and § 1983 claims. Accordingly, the Court **DENIES** these motions as written (Dkt. #44; Dkt. #46). However, if THM wishes to pursue its § 1983 claims *only*, it may refile its motions for leave—containing only the § 1983 claims—within **<u>seven (7) days</u>** of this order. Otherwise, the Court will dismiss this case.

## CONCLUSION

It is therefore **ORDERED** that THM's Motion to Re-Urge THM's Motion to Vacate Arbitration Award (Dkt. #32); Motion for Leave to Amend Original Petition (Dkt. #44); and Motion for Leave to Join Additional Parties (Dkt. #46) are hereby **DENIED**. If THM wishes to pursue only its § 1983 claims, it may refile corrected motions for leave within **seven (7) days** of this order.

**IT IS SO ORDERED.**

**SIGNED this 29th day of March, 2019.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE